What did we do wrong to get this far? I'm going to have to see what happens. Ms. Albert. Thank you. My name is Jennifer Albert. I'm with the firm of Goodwin Proctor. I'm here today representing the patent owner, Appellant EPLUS. The board here fundamentally and unreasonably misconstrued the claims. The claims are computer implemented methods where each step builds upon the one before. This court last year in the case of EPLUS versus Lawson Software held that these same claims aim to enable businesses to use computer networks to purchase goods. The board unreasonably interpreted the claims to cover a collection of unrelated non-sequential steps that can be manually performed contrary to the claim language, the teachings of the specifications, and this court's prior findings. This resulted in the board's erroneous construction at page A38 of the appendix that the building a requisition step of claim 26 does not require that the data be obtained solely from the data found in the product catalog. But the building a requisition step of claim 26 plainly requires that the requisition be built using the same data referenced in the preceding steps of maintaining and selecting product catalogs to search and searching those selected product catalogs for matching items. The board compounded its error by holding at page A40 of the appendix that, quote, we do not find that associated sources must be included in the requisition per claim 26, end quote. But each selected matching item used to build the requisition is required to have an associated source by the express language of the claim. Those sources are the sources that are associated with the items in the product catalog in the first claim element. The claims are plainly directed to automated computer implemented methods. The claims use terms including database, data, searching, building, processing, and generating. The embedders described their inventions in contrast to prior art procurement systems which employed several manual operations coupled with awkward electronic processes. Can I ask a question? Sure. I understood our prior E-plus decision to hold that these claims did require a computer, that there was a computer involved. But I didn't understand it to hold that every element of the method had to be performed by computer. Am I misunderstanding? Do you read our opinion differently that every element of the claim is required to be performed by a computer? I read the language of the claims themselves as well as the teachings of the specification to require that these steps all require use of a computer to perform them. The steps build upon each other. First, you maintain electronic product vendor catalogs. You select catalogs to search. You search those catalogs for matching items. Then you build a requisition using the results of the search as well as their associated sources from the vendor product catalog. Then you process that requisition to generate one or more purchases. How am I to understand that these claims and every element thereof require a computer to do it? Let me give you an example. Claim 26, determining whether a selected matching item is available in inventory. Couldn't that be done by the user sitting in front of the computer when he looks at the results that the computer spits out? Then he or she makes the determination of whether the thing he's looking for is in inventory. So that would be the user doing the determining step. Isn't that completely consistent or wouldn't that fall clearly within these claim elements? The user is using computer-generated results to make the determination, yes. Correct, but the computer then is not doing the determining step. The computer would not be determining anything. The user would be determining based on what the computer shows. I'm just trying to understand whether every single element of this claim, in fact, is only capable of being performed by a computer because the claim language itself doesn't make me feel like that's got to be the case. Every element of the method is performed using a computer. Certainly, a user interacts with the computer to perform the element, but this process is computer-implemented. Claim 26 talks about selecting the product catalogs to search. Is that a computer function? That is performed using a computer. For example, making a selection through a user interface is described in the specification. But the computer doesn't make the selection. Well, the user of the system uses the computer to make the selection. The inventors indicated in the summary of their invention at column 2 of the specification that it was, in fact, an object of their invention to provide an electronic sourcing method and system that provides the user with the capability of searching a database containing data, including product vendor identification and other product information relating to items available from at least two vendor product catalogs, and then the capability of transferring the product information for the desired catalog items that are obtained as a result of the searches through a requisition purchasing system for use in generating a requisition that includes entries for desired catalog items. Under any reasonable construction, the PO Writer and Gateway Manuals do not anticipate the building a requisition claim element. Referring first to the PO Writer Manual, the Board initially relied upon the disclosure at pages 47 through 48 of the manual as purportedly anticipating the building a requisition claim element. But as described in that section, the process is creating a purchase order from a catalog without the intervening step of building a requisition. The Board justified its interpretation by holding that this order is interpreted to be a requisition. I'm referring to page 831 in the appendix. This interpretation is unreasonable. The claims plainly require two separate steps of first building a requisition and then processing that requisition to generate purchase orders. So effectively, the Board read out the requirement of the two separate steps there. The Board next relied upon the disclosure at pages 129 through 136 of the PO Writer Manual relating to requisitions created using the point-and-shoot method. But again, these requisitions fail to satisfy the claim element because the sources that are supposedly associated with the item in the item database are not used to populate the requisition form that's created using the system. What standard of review are you applying in your analysis? Or should we apply a de novo standard of review in all of the arguments you're making here? Or is there a differential standard applicable? There would be a de novo standard of review with respect to the Board's claim construction and then the substantial evidence standard of review with respect to factual findings. So the points you've just made to us in the last three minutes are those dealing with claim construction? Yes, they are. What you just said a minute ago in conjunction with the building step, I thought you were discussing what, in fact, is disclosed by the PO Manual. That would be a question, in fact, that would give substantial evidence deference to what the PO Manual discloses, right? But the Board, in interpreting the disclosure, interpreted the claim that the purchase order was interpreted to be a requisition and effectively interpreted the claim such that the two separate steps of building a requisition and generating a purchase order weren't required to satisfy the claim. So that's a claim construction issue. With respect to the requisitions created using the point-and-shoot method, as I explained, the source that's supposedly associated with that item in the item database is not brought forward to create the requisition. In fact, the Manual indicates that the vendor is not even required at the requisition stage. I'm referring to page A219608. In fact, as shown on appendix page A219624, it's not until the purchase order stage that the vendor needs to be selected for each desired item. So it was unreasonable for the Board to disregard the express claim requirement that each requisition item have an associated source, and that associated source refers back to the sources in the catalog. Turning to the Gateway Manual, the Board initially relied upon the disclosure at page 4-17 relating to requisitions for stock items. But these requisitions don't satisfy the claim requirement. They're not created using matching item data found in searches of selected vendor product catalogs. These items are already in stock. There is no vendor product catalog that's searched. The Board next turned to the disclosure at page 4-18. But for these requisitions, the supposed source that's associated with the item in the item database is not brought forward to populate the requisition form. In fact, the Manual indicates at page A219218 that a user can manually input a vendor ID, or if the vendor is not known or not required at this time, the vendor entry may be left blank. In fact, the purchase order section of the Gateway Manual confirms that the vendor need not be entered until the purchase order creation stage, and then it is done manually by the user. And I'm referring to page A219270 and A219318. The Board's explanation at page A40 of their opinion demonstrates the error in its claim construction, where they stated, quote, we do not find that associated sources must be included in the requisition per Claim 26, end quote. This is not a reasonable interpretation for a claim element that expressly requires that the requisitions be built using data relating to selected matching items and their associated sources. The solicitor, in attempting to bolster the Board's decision, relied for the first time upon screenshots that were allegedly generated using the executable code for the PI Writer and Gateway software products. This is improper for several reasons. First, the screen displays do not appear in either manual. The pending rejections are based on the manuals alone. Second, the screen displays are neither patents or printed publications, and the Patent Office Examiner agreed, and the claims were never rejected on the basis of these screenshots or the executable computer code. Finally, the screen displays are dated 2006 and bear legends indicating that they are privileged and confidential. Therefore, they are not prior art. We submit that the Board's rejection of Claims 26-45 should be reversed and the claims should be confirmed as patentable. Thank you. Thank you, Ms. Elbert. Ms. Elbert? Thank you, Your Honor. May it please the Court. The problem that ePlus has in this case is that their claim does not reside in the specific software that they disclosed in their patent. The Board was very upfront with them. They said, yes, your software has some neat functionalities. The problem is that your claims are so broad, they're not limited. And this is the reason why the prior art reads upon ePlus' claim. And we set forth in our red brief, pages 41 through 43, all the elements that are in the claim, and it shows that every element in the claim is found in the prior art. As far as the requisition, today it seems like they're trying to turn it into some claim construction issue. The Board said that a requisition is just a request to purchase something. They never appealed that. And what the Board actually relied on, for instance, if we go to P.O. Ryder... Could I take this? Please come back to where you are, but what's the relevance of the screen displays in your argument, and why are we considering them? Well, the short answer is, the court doesn't have to consider them. It was really just the piling on. The manuals themselves, the words of the manuals, have every element that's in the claim. But we were merely trying to respond to their argument that the words don't... Basically, their argument was, the words don't mean what the words actually say. And we were just trying to show, yes, this is exactly how the program worked prior to 1993. So, to get back to P.O. Ryder, the Board relied on the section that is described in Chapter 5, which starts at A219517, and it talks about creating a purchase order from the catalog. But within that step, specifically at A219519, there's a screen, and it shows that this is the requisition. The Board construed this as the requisition because it's just the request to purchase something. And then it goes on to make a purchase order. And that's where that's found in the prior art. But we also showed, and we think this is proper under Ingrate Hedges, that we can point to other parts of a reference to show, to respond to their arguments. We also refer to the purchase requisitioning section of the manual that's Chapter 13, that starts at A219602. And that talks about remote requisitioning. And then later on, there's a section that talks about creating a purchase order from a requisition. So, really, it's all in there. Another one of their arguments is that... Do you believe that this method claim, Claim 26 in particular, isn't computer implemented? I don't think it's computer... I don't think it has to be read so narrowly that it's computer implemented. What the board and what the examiner said was, your claim is so broad that it doesn't... that it's not, like I said, it's not limited to what's in... that's what's disclosed in the patent. It doesn't recite the electronic sourcing system that you disclose in your patent. And what the solicitor was trying to do in our brief was just merely say, if you look at the words of the claims itself, it doesn't even recite a computer. So, of course, the board was correct that it's not limited to specific functionalities. Well, but as she pointed out, it discloses a database. Right. Our database is normally thought of as electronic and especially in the context of this patent where the title is Electronic Sourcing System and Method. I mean, clearly, the database disclosed throughout this patent is an electronic computer-held database. Disclosed throughout the patent, yes. They knew how to write a claim to an electronic sourcing system. Do you think the word database can be read as not being something contained within a patent? Yes. I mean, is that a computer? I think it can. I think it's a debatable point. But in this case, it's not really something we have to debate because the prior art, the prior art references are computerized systems. So even if we read this claim to recite a computer, the prior art is also a computerized system. But I think as I understand her argument, her argument is that every single element of the claim requires computer implementation. And I might be wrong, but I think some of CTO's arguments regarding anticipation may allow for some non-computer components. I mean, is that a fair characterization? Yes, that's a fair characterization. So I think if she's right, that every element requires computer implementation, then obviousness might be on the table, but anticipation might be a stretch. Every element in the prior art has a computer step. The board's point was that not all the data has to come from the computer, that a person sitting at the computer can enter that data manually. And that's consistent with the claims. Their claims are not limited to everything coming from the catalog itself. But also I'd like to point out several instances in their specification where they talk about manual editing and manual entry of data. And I can start at A326, column 5. But the manuals don't seem to disclose building a requisition using vendor data from the database, right? I would disagree with that. I think they do talk about using... But I would point to a portion of E-Plus' specification where they talk themselves about manually entering the vendor data into the requisition. And this is at A330, column 14. And they say, moreover, as discussed above, an entry into an inventory... Line 38 through 42. This is an example where they have a requisition and they are changing the data. They are manually changing the vendor number and the catalog. So it's not accurate to say that in their specification every single piece of data has to come from the catalog and has to be carried all the way through to the purchase order. And there are other examples. A broad example is at A326, starting at line... I'm sorry, column 5, starting at line 35. And this section of the specification is talking about the data that's in the catalog, moving it over into the requisition. And it says that the data is carried over, but it says the data preferably comprise all or a subset of the following fields, and then it names several things like price, vendor, catalog. So it necessarily means that if that information is not in the catalog, the data has to be entered by another way, and that's manual entry. The other examples are at A331, column 15, starting at line 29 through 31. And this is an example where the price in the requisition is changed from the price that came over from the catalog. And there's another example of manual pricing that we mentioned in our brief. That's at A332, column 18, line 17, where it talks about an employee contacting the supplier to confirm pricing. So that's a manual step. Yes, you're sitting at a computer, but a human is interacting with all these steps. It's not accurate to say in their specification the data comes from the catalog and the data can never be changed. They didn't discuss print and publication at all. That was a big issue, but I'll rest on our brief if the Court doesn't have any questions. As to that issue and also the other issue, enablement, they also didn't raise that, so I'll rest on my brief as to that issue as well if there are no further questions. Thank you very much. Thank you. Ms. Albert? I would like to address the Board's construction of a requisition as a request to purchase something. I admit that the Board did construe the requisition that way, but the requisitions of the claims require that they be built using data relating to selected matching items and their associated sources. This data comes from the data in the first claim element, the data relating to the items and their associated sources. So, at a minimum, the requisitions must be built using that data that was found from the searches of the selected vendor product catalogs and their associated sources. With respect to some of these disclosures in the patent, there was a reference to page A330, column 14, line 38. In this disclosure, the requisition has already been built by the system, and thereafter, items in the requisition and their associated sources are converted to data relating to different items and different sources. This disclosure actually relates to the converting data element of the claims. There was a reference to page A326, column 5, line 35. This actually illustrates our point that the data from the catalog search results is electronically transmitted from the search program to the requisition and purchasing system to build the requisitions. And I believe there was a mention of the creating purchase order from catalog process disclosed in the PO writer system. The board improperly collapsed the required two claim steps. They can't first construe the purchase order to be a requisition, and then also construe it to be a purchase order if the purchase orders are processed from the requisition. Thank you. Thank you, Ms. Albert.